This action was brought to compel specific performance on certain contracts claimed to have been made between complainant and her husband, Adolph H. Barkerding, who died January 1st, 1929. He and complainant were married in 1893 and had three children, of whom two survived him. On July 18th, 1928, complainant secured a decree nisi of divorce, which became final on the 19th day of October, 1928. On the 9th day of November, 1928, he remarried. By the terms of his will he created a trust fund of the bulk of a considerable estate, with a life interest to his second wife and the remainder to his two surviving children, of whom the son is a minor, nineteen years of age. No provision was made in his will for complainant.
Complainant contends that in the early years of their marriage she had turned over to her husband the sum of $7,000 for him to invest for her and that he never returned this money to her. She further contends that while the divorce proceedings were pending she negotiated with him for a settlement of her claim for the money entrusted to him for investment and for a proper provision for herself and her minor son. She contends that he first made an agreement, the main provisions of which were that she was to receive $200 a month for herself and $100 for the son until he should be self-supporting; that in the event of her remarriage the income should cease and that provision should be made in his will for payment of the mortgage on a house to be purchased for her. She contends a second agreement was made, by the chief provision of which he directed his executors to pay complainant the sum of $200 a month until she should remarry. *Page 431 
On July 3d 1928, the husband executed a trust deed by the terms of which he turned over to the defendant Peoples Trust and Guaranty Company as trustee two hundred shares of common stock of a certain corporation, the main terms of which were that upon the death of the husband $200 a month should be paid out of the income to complainant during her lifetime. Two days later the husband caused a residence to be deeded to complainant subject to a mortgage. Complainant took possession of the house and has been in occupation of it, and since her husband's death has been in receipt of the net income from the two hundred shares of stock held in trust. The income from this stock has not been sufficient to pay to her the sum of $200 a month, but has been approximately $100. As previously stated, no provision whatever was made for complainant in the husband's will. Up to the time of his death the husband provided for complainant and her son at approximately the rate of $300 a month.
All the necessary parties are now before the court and complainant asks that the husband's estate be charged, interalia, with payment of the mortgage on the property deeded to her on July 5th, 1928, and the payment to her of the sum of $200 a month until her death or remarriage, less any sums that may be paid to her under the trust deed of July 3d 1928.
Complainant rests the terms of the contract upon two documents signed by Adolph H. Barkerding, the husband, the first being dated January 11th, 1928, and the second May 24th, 1928.
Complainant's contention is that the purchase of a house by the husband and the execution of the trust deed of July 3d 1928, were in partial performance only of the binding contracts previously made as embodied in the two documents signed by the husband. It is the contention of the defendants that these two documents did not constitute contracts but were mere expressions of intentions or at most unaccepted offers to make a contract. With this latter construction of the documents and the acts of the parties I am constrained to agree. *Page 432 
When the divorce was imminent the daughter took up with her father, the husband, the matter of complainant's support. The husband signed the document dated January 11th, 1928 (ExhibitC-1), which reads as follows:
"Property: Synopsis of agreement that I am willing to make and pledge myself for its faithful observance.
I agree to give a house for the occupancy of Mrs. B., title to be vested in her name in the event that I will be compelled to place a mortgage on this property for a short period of time, I fully agree to pay all interest charges.
Maintenance: I agree to pay the sum of $300 per month payable on the 1st and 15th of each month, this sum to include the maintenance and support of my son, Ellis, for the period of time he may live with his mother, and until such time as he will require such support, when he becomes self-supporting, this amount may be automatically reduced, the minimum amount being not less than $200 per month.
Protection during my lifetime: It should be understood that should financial reverses overtake me and it might be impossible to pay as much as before, that a reasonable reduction be made, it is only fair to agree to this, because if we were living together in the usual relations that we would both suffer alike and all connected with me. This is merely a precautionary measure as I do not anticipate that anything of the kind will occur as my connections with my company are on a very solid basis and I am taking every means to protect myself against any such contingency.
Protection in the event of death: I agree to provide a means whereby the income will be protected, am now investigating the best means of accomplishing this, and I shall not fail in this respect. The suggestion to place a mortgage on my present home I could not entertain, nor would it provide the advantage which I shall secure from another source, it would also hamper the sale of this property, if it becomes necessary to sell it.
Sale of Ridge avenue property: If this is really an issue, I will agree to sell at an advantageous time; I should not be required to sacrifice it by any quick sale; property values will increase within a short period of time, the property is very substantial and I only ask for a reasonable time to dispose of it to every advantage.
Cessation of income: It should be understood that in the event of the remarriage of Mrs. B., that the income cease. This is also intended as a protection for her against the marriage of some unscrupulous person who might wish to live upon her resources, and is only fair and just; in any such case, I would always support my son until such time as he is able to take care of himself.
Addenda: Due provision will be made in my will for the payment of any mortgage on the home of Mrs. B.
A.H. BARKERDING.
January 11th, 1928." *Page 433 
This is obviously not a formal contract. Complainant is not named as a party and did not sign it nor is there any evidence that she ever formally accepted it. There is no evidence that complainant personally ever discussed this document with her husband until after the divorce decree. Sometime after the signing of this document the daughter again went to her father and evidently stated the inadequacy of the first document. He thereupon, on May 24th, signed a second document (Exhibit C-2), which reads as follows:
"An agreement assuring the payment of maintenance to Mrs. C.J. Barkerding in the event of my death.
I hereby direct the executors of my will, The Hackensack Trust Company, of Hackensack, N.J., and Mr. Thomas G. Forbes, of Park Ridge, N.J., in the event of my demise to pay monthly to Mrs. Charlotte J. Barkerding, the sum of two hundred dollars, if she be alive at that time, plus the sum of one hundred dollars for the maintenance of my son, Ellis G. Barkerding, in the event he is still a dependent, less any sum he may realize as interest from his share of my estate. But should the said Mrs. Charlotte J. Berkerding remarry, this income of two hundred dollars will automatically cease.
This clause will be duly inserted as a codicil in my will, and a copy of same will also be filed with the executors of my will, mentioned above who will fully execute its provisions.
A.H. BARKERDING.
Dated at Park Ridge, N.J., May 24th, 1928."
Here again there is no formal contract nor does complainant appear as a party, and again there is no testimony of any formal acceptance by complainant or of any personal discussion between her and her husband respecting this document until after the divorce decree. Subsequently the husband deeded the house and executed the deed of trust as above set forth. About two weeks later the decree nisi was entered. It seems clear to me from the documents and the sequence of events that the husband wished to make provision for his wife in view of the approaching divorce. He first suggested an arrangement as set forth inExhibit C-1 of what he was ready to do. It will be noted that he agrees to pay a minimum of $200 a month but that this may be scaled down in case reverses should overtake him. It further states that he is investigating the best means of protecting the income. *Page 434 
He indicates his willingness to agree to sell his home at an advantageous time. Such references to my mind indicate an intention that the document is merely a tentative proposal.
Exhibit C-2 is an obvious attempt to make a provision for payment out of his estate of maintenance for his wife and son. As a testamentary document it is, of course, invalid.
It will be noted that the first document (Exhibit C-1) provides for $200 a month with the proviso that it might be reduced, and also states that a means will be devised to protect the income in case of the husband's death. It sets forth that provision is to be made in his will for the payment of any mortgage on the house he is to buy for the wife. Exhibit C-2 is an attempt to make a provision for payment to the wife in case of his death. Both of these documents provide for payments to be made only so long as the wife should not remarry. The trust deed (Exhibit D-1) on the contrary provides for an absolute income during the life of the wife after the death of the husband, and has in it no provision for termination of income in case of remarriage.
Taking all the circumstances together I think the sequence of events in these various transactions was as follows: The husband made a proposition as to what he was willing to do as set forth in Exhibit C-1, which was not accepted as it stood; and he amplified his offer by Exhibit C-2. The proposition in this document was never put into effect, but I have no doubt that the trust deed of July 3d was intended by the husband as a substitute for it, especially as neither of the prior documents has any provision for such a trust. The wife has accepted the trust deed and is receiving the benefit of it, her complaint being that it does not produce enough income to provide her with $200 a month. In like manner the wife accepted the deed to the house he bought for her. I think it is significant that the transfer of the house and the execution of the trust deed occurred just before the entry of the decree nisi, for, with the other circumstances, it leads me to the conclusion that these provisions for her were considered by the husband a carrying out of his obligations for the wife's maintenance, except for payments to her during *Page 435 
his lifetime. These payments he continued to make up to the time of his death.
In reaching these conclusions I have considered the testimony of the complainant and her daughter as admissible in evidence, and it is therefore unnecessary to decide whether their testimony or any of it should have been excluded.
There is in none of the documents any expression to the effect that the maintenance referred to in them was in lieu of alimony or in consideration of the agreement of the wife not to apply for alimony in the divorce proceeding. While it is competent for the parties to make an enforceable contract for alimony in gross, such a contract does not relieve the husband against a claim for future support if the wife becomes needy, unless in the divorce proceeding the court has examined into the facts and circumstances and has ascertained and adjudged that the sum is suitable and adequate for her support. Greenberg v. Greenberg,99 N.J. Eq. 461. In view of the reluctance with which the court of chancery holds as binding on both parties a contract for maintenance which has not been scrutinized and passed upon by the court, it would seem that such a contract should be proven by clear and convincing evidence. I do not consider that the complainant has so proven her case and a decree will be advised dismissing the bill.